# NEW YORK SUPERIOR COURT.

### The Woodward Steam Pump Manufacturing Company, plaintiffs agt. Edward L. Stokes, defendant.

On a motion by a defendant to discharge an *order of arrest*, where from the papers it is evident that the plaintiffs can recover in the action only in case they establish the making of the defendant's contract by him *with intent not to pay for the work done*, as he made no false representations, a *trial by jury* affords a much better forum, and more means of determining that question, than an argument on affidavits.

Where the defendant has not, in his affidavits, as he was bound to do, absolved himself from all suspicion by showing the different sums of money he has paid out, and to whom, instead of making a general statement of such payments: and has not explained the circumstances of suspicion attending the conveyance of his property, also, the circumstance of his remaining in possession of the property since its conveyance, as theretofore :

*Held*, that if the defendant is innocent of any fraud, it is no great hardship to be out on bail until the trial, and then he can entirely absolve himself.

*Heard Special Term, March,* 1867.
*Decided April* 6, 1867.

THIS was a motion to vacate an order of arrest of the defendant. The action was upon contract, for goods sold and delivered, and work done, and materials furnished. The ground of such order was that the debt was fraudulently contracted, and that the defendant had assigned and disposed of his property with intent to defraud his creditors.

The order was granted on an affidavit of the secretary of the plaintiffs (Blood), who stated therein that a superintendent of the defendant first applied to have work done upon certain works for refining oil, belonging to defendant, termed "The Sterling Oil Works."

That the defendant himself represented to such affiant that he owned such works, and the land on which they were, and requested him to do all the piping work, and furnish all the pumps necessary for such works, and offered to pay half cash, and requested a credit of four months for the other half, which the plaintiffs agreed to give him, on the strength of his representation of his ownership of such works. They did the work, amounting to nearly $12,000, upon which the

defendant has paid about $3,500, leaving a balance of over $8,400 due.

During the progress of, and before the work was finished, the defendant gave the plaintiffs his two notes for $4,000 and $2,500 respectively, at four months.

Five days after such work was finished, and over three months before such notes became due, the affiant, having been informed the day before by the defendant's superintendent, that he had transferred such oil works to his mother, asked the defendant if he had done so? He admitted he had; stated that he was insolvent; owed over $120,000; had nothing but such works, which he had conveyed to his mother a fortnight before, who had lent him about $80,000, in different sums from time to time, upon it. The defendant's mother, a day or two afterwards, told the affiant that she thought she had taken such deed several months before; that her husband had it; she could not tell how much she had paid for it, but had paid money at different times to the defendant.

The defendant attributed his losses to the running out of oil by carelessness, fall in its price, and a fire. His superintendent admitted that his losses from such causes could not exceed $1,500.

Such affiant stated the value of such works to be $100,000.

The defendant executed to his mother three mortgages on such premises during the progress of the work of the plaintiffs, for $20,000, $15,000 and $23,250, respectively, without notifying them thereof.

The motion was made on the affidavits of the defendant, his superintendent (Chapman), his mother (Mrs. Nancy Stokes), and his father (Charles H. Stokes).

The defendant denies in his own affidavit any fraudulent concealment, or intent to defraud the plaintiffs, either in contracting the debt or disposing of his property; avers that the application to do the work came from the plaintiffs; his solvency at, and freedom from embarrassment at the time, and that he was then sole owner of the Sterling Oil Works. That he sustained great losses, by putting up stills

at a great expense, which proved a failure, whose result could not be determined until they were finished, long after the plaintiffs began their work, and that his losses during the continuance of such work exceeded $50,000. That his mother had advanced him more than $35,000, for which she had a mortgage upon such works, and there was another mortgage on it for $16,000. That the value of such works was not over $75,000, although he had expended $100,000 on them, and he conveyed such works to his mother for the former sum, a few weeks before the time the plaintiffs completed their work.

Chapman, the defendant's superintendent, stated in his affidavit, that he made the negotiation with the agent for the plaintiffs, for the work done by them, and was present when the agreement was finally made, one of the terms of which was to pay half in cash and the other half in notes of the defendant at four months. That he knows that the defendant lost $20,000 in the construction and carrying on of such works. He denied therein, stating to the secretary of the plaintiffs (Blood) that the defendant's losses were only $1,500. On the contrary, he showed him a statement of $12,500 of losses, which did not include the whole.

The defendant's father (Charles H. Stokes), testified to the advances of money by him to his son from his wife's separate estate ; the taking of $35,000 in mortgages therefor, and final sale to hs wife for $75,000, and the payment of the purchase money *in cash, or by assumption of liens thereon*, and of the debts of the defendant.

The affidavit of his mother states, that she authorized her husband to do all that he did for her.

Supplementary affidavits on the part of the plaintiffs, of the attorney (Mr. Warren), the secretary (Blood), and their agent (Woodward).

The first shows an admission by the defendant that the cost of such oil works was nearly $100,000. That the defendant was worth $50,000 when he began them. That he now owed about $70,000. That he sold a house and received $21,000 therefor, also horses and carriages, &c., to his father-

inlaw, for $10,000, and shipped $25,000 worth of merchandize to Europe. That he did not account on a supplementary examination for all the money received by him; and that such works are being carried on by him as agent.

Blood states in his affidavit, that Chapman admitted to him there was nothing in defendant's books to show any indebtedness to his mother. That the amount of machinery put in such works was short of $34,000, and defendant still owes $11,000 therefor, besides $9,000 to the plaintiffs. That the defendant had conveyed the property before he gave the plaintiffs his notes.

Woodward testifies, that such works are worth $100,000.

B. F. DUNNING, *for motion.*
IRA D. WARREN, *in opposition.*

ROBERTSON, Ch. J. It is very evident that the plaintiffs can recover in this action only in case they establish the making of the defendant's contract by him with intent not to pay for the work done, because he made no false representations. A trial by jury, therefore, affords a much better forum, and more means of determining that question, than an argument on affidavits.

It is in evidence without contradiction, that the defendant was worth $50,000 in October last, borrowed $35,000 of his mother, received over $31,000 for property sold by him, and shipped $25,000 worth of property for Europe, making $140,000, passing through his hands.

Assuming that the works cost him nearly $100,000, of which $9,000 remains due to the plaintiffs, and $10,000 to the Allaire Works; the difference of $60,000 is unaccounted for, as well as the defendant's present indebtedness of $70,000, except by about $8,000 in manufacturing oil and expenses, and $3,400 in a speculation, and his superintendent's salary.

The defendant also claims that his mother advanced about $23,000 more to him, and to pay off liens and debts, making

in all, even assuming his losses to have been $20,000, at least $63,000 unaccounted for, besides his present debts.

Under these circumstances, the defendant was bound to absolve himself from all suspicion, by showing the different sums paid, and to whom, and for what liens by his mother, to make up the amount of her purchase money. Instead of which we have only a general statement by his father of payments.

It is a circumstance of suspicion, that the defendant conveyed his factory to his mother before the plaintiffs had completed their work, and before he had ascertained, according to his statement, that they were a failure. He has also remained in possession. in fact, since the conveyance, carrying on the works as agent.

If the defendant is innocent of any fraud, it is no great hardship to be out on bail until the trial, and then he can entirely absolve himself.

The motion must be denied with seven dollars costs, without prejudice to a renewal on additional affidavits.